UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Greg E. Grell,<br>　　　　　Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.,<br>　　　　　Defendant. | §<br>§<br>§　CASE NO. 1:23-cv-1173<br>§<br>§<br>§<br>§<br>§<br>§ |

COMES NOW Plaintiff **GREG E. GRELL** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt reaffirmed in his Chapter 7 bankruptcy.

2. Defendant Experian Information Solutions, Inc. ("Experian") is not reporting Plaintiff's Harley-Davidson Credit Corp. ("Harley-Davidson") account accurately as reaffirmed, pays as agreed, and open.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

4. A pervasive and fundamental misunderstanding presently thrives in the United States regarding the long-term impact that filing a consumer bankruptcy has on the consumer's creditworthiness. Specifically, consumers tend to believe that since a bankruptcy can be reported on their credit report for ten (10) years, their creditworthiness will be ruined for the same length of time. This is not true.

5. The *majority* of consumer debtors file a consumer bankruptcy to *raise* their FICO Score and remedy their poor creditworthiness.

6. In fact, it is possible for consumer debtors to obtain a 700 FICO Score as soon as twelve (12) months from filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys the consumer's creditworthiness of ten (10) years; however, to perpetuate this bankruptcy myth, creditors intentionally and routinely ignore industry standards for accurately reporting bankruptcies, as well as the debts included in those bankruptcies, to keep consumers' credit scores low and their interest rates high.

8. Creditors know that deviating from recognized credit reporting standards will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

9. This was not the intent of Congress when it enacted the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

12. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

13. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over the Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that the Harley-Davidson account covers a motor vehicle that was reaffirmed in his Chapter 7 bankruptcy. Subsequent to the reaffirmation, Plaintiff made all payments and has continued to do so until present.

15. Plaintiff alleges that Experian is incorrectly reporting Plaintiff's account without a balance and reporting that the debt as if it were discharged in bankruptcy. Further, Experian is incompletely and inaccurately reporting payment history even though Plaintiff has made all payments since the reaffirmation. Plaintiff alleges the Harley-Davidson tradeline fails to list the debt as reaffirmed. Instead, it says the reaffirmation was "rescinded" which is patently incorrect and misleading.

16. Plaintiff alleges that the FCRA requires complete and accurate reporting; therefore, a credit bureau cannot pick and choose which portions of an account to report. If an account is reported, then it should report all portions of that account in a manner which complies with the maximum accuracy and completeness standard of the FCRA.

17. Plaintiff alleges that the Defendant is familiar with the FCRA requirements and credit reporting industry standards, and subscribes thereto.

18. Plaintiff alleges that Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

19. Plaintiff alleges that Defendant's actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine his ability to repair his Credit Score.

20. In the alternative, Plaintiff alleges that Defendant's actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

21. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  FICO, Inc.**

22. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

23. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions.[1]

---

[1] While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. See https://www.myfico.com (a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").

24. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

25. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

26. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

27. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

28. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

29. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

30. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

31. There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

32. Each of the five (5) factors is weighted differently by FICO.

33. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

34. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

35. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

36. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

37. FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

38. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and FICO uses the filing date, under both Chapters, to determine how long ago the bankruptcy took place.

39. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." *See* https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

40. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

**B.     e-OSCAR**

41. e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

42. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

43. The ACDV contains codes next to certain data fields associated with a credit file.

44. When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

45. When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

46. For clarification, an AUD or other regular transmission is sent when the data furnisher initiates reporting on a consumer's account (e.g., opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

C. **Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator**

47. When a consumer files bankruptcy, certain credit reporting industry standards exist.

48. Certain data is regularly expected and calculated by FICO when determining a consumer's creditworthiness.

49. The Consumer Information Indicator ("CII") is a critical field that indicates a special condition that applies to a specific consumer.

50. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

51. The CII "R" denotes reaffirmation of a debt. In addition, completely reaffirmed debts should report appropriate Account Status and account information as it applies going forward.

52. The CII field is a critical field for consumers as it directly relates and impacts a consumer's creditworthiness.

53. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

54. Furthermore, the lack of a CII reported suggests that creditors are free to collect against a consumer as an individual, or that no stay exists to prevent in personam collection activity.

55. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference than if the appropriate CII indicator were reported.

56. The FCRA permits a bankruptcy to be reported for ten (10) years from the date the bankruptcy was filed.

57. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

58. The bankruptcy's impact on a consumer's FICO Score lessens with the passage of time.

59. Accordingly, the failure to reference the bankruptcy filing (CII field) and/or the correct petition date results in a lower FICO Score, which in turn causes credit decision makers to draw a more negative inference regarding a consumer's creditworthiness.

D. **Plaintiff's Debt was Reaffirmed in his Bankruptcy**

60. Plaintiff filed a voluntary petition for Chapter 7 bankruptcy on October 5, 2022, in order to repair his creditworthiness and Credit Score.

61. On or about December 17, 2022, Plaintiff executed a reaffirmation agreement regarding the Harley-Davidson account, which matched the original terms of the prior agreement, and was filed with the court on January 5, 2023 ("Reaffirmation Agreement").

62. Plaintiff's bankruptcy was discharged on January 10, 2023.

E. **Plaintiff's Credit Report Contains an Inaccurate and Adverse Tradeline, which Plaintiff Disputed to no Avail**

63. On March 10, 2023, Plaintiff ordered an Experian credit report to ensure proper reporting by his creditors (the "March 10 Credit Reports").

64. Plaintiff noticed an adverse tradeline in his March 10 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with the FCRA standards.

65. Plaintiff then disputed the inaccurate tradeline regarding the account with Harley-Davidson via certified mail to Experian on or about May 11, 2023 (the "Dispute Letter").

66. Plaintiff's Dispute Letter specifically put Experian on notice that the Harley-Davidson account should not be listed as closed or showing discharged in bankruptcy since the account was reaffirmed, and that the account should be listed as open, with a current balance, and payment history.

67. Plaintiff's Dispute Letter included a copy of the signed Reaffirmation Agreement along with copies of recent payments to support his contention that the Harley-Davidson account was not discharged, and he was continuing to make payments.

68. Plaintiff's Dispute Letter also detailed what was perceived to be problematic about the Harley-Davidson account reporting, addressing the tradeline individually.

69. Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the account as required by the FCRA.

70. Plaintiff is informed and believes that Experian received Plaintiff's Dispute Letter and, in response, failed to send Plaintiff's dispute to Harley-Davidson, as the data furnisher, via an ACDV through e-OSCAR.

71. On July 27, 2023, Plaintiff ordered a second Experian credit report, to determine if the reporting on the account was updated.

   a. **Inaccuracy – Harley-Davidson**

72. Despite actual knowledge, Experian continued to report Plaintiff's Harley-Davidson account, beginning in 2022052211XXXX, with a status of "Bankruptcy Chapter 7 Reaffirmation of Debt Rescinded/Never Late", without a balance, and with incomplete and inaccurate payment history. This is patently incorrect as this account was reaffirmed, is currently open with a balance, payments were made, and it was not discharged in his bankruptcy nor was the reaffirmation rescinded.

73. Plaintiff alleges Experian's reporting shows the Harley-Davidson account in a manner which makes it appear to third parties as if it were discharged in bankruptcy.

74. Reporting a reaffirmed debt as closed or discharged in bankruptcy is patently incorrect. Reporting incomplete payment history when payments have been made is patently incorrect. In addition, this inaccurate and incomplete tradeline is misleading in a way that can adversely affect credit decisions.

75. Plaintiff alleges that Experian failed to investigate whether the Harley-Davidson account was reaffirmed, or whether the Plaintiff had been making payments since filing the Reaffirmation Agreement.

76. Experian failed to update the Harley-Davidson tradeline to reflect that Plaintiff reaffirmed the account, the account is open, and that payments have been made, but instead it reported the account as if it were closed and discharged in bankruptcy.

77. Experian failed to provide notice to Harley-Davidson that Plaintiff was disputing the inaccurate and misleading information, and thus Experian failed to conduct a reasonable investigation of the information as required by the FCRA.

78. Based on Plaintiff's dispute, the provided payment verification, and the Reaffirmation Agreement, Experian should have known that Plaintiff's account was not closed or discharged due to the Reaffirmation Agreement and that Plaintiff has maintained a positive payment history which was not being properly reported.

79. The most basic investigation would include a simple review of the dispute and provided documentation on the account compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA regarding how to report a reaffirmed debt.

80. Plaintiff alleges that Experian failed to review if their reporting complied with the unambiguous language of the FCRA, regulatory guidelines on accurate reporting under the FCRA.

81. If Experian reviewed such standards, Experian would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete. At the very least, the investigation would reveal that payments were being made on the account, and therefore, those payments should be reported.

82. By continuing to report Plaintiff's Harley-Davidson account as described hereinabove, it incorrectly appears to third parties viewing Plaintiff's credit reports that Plaintiff has not properly made payments and that the account was included and discharged in his bankruptcy, which is inaccurate.

83. Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

84. A discharged debt is treated far more derogatorily by a potential lender than one which was reaffirmed and reflects a consumer's ability to make payments month after month, year after year.

85. As payment history makes up thirty-five percent (35%) of a consumer's credit score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to poring through each tradeline of every account listed to obtain context), the incorrect payment history reported by both Experian is lowering Plaintiff's Credit Score, which adversely affects his ability to obtain credit.

86. Further, even if a lender did look through the tradelines, based upon Experian's individual reporting, it appears as if the Plaintiff has not made payments on the Harley-Davidson account and that it was closed, or discharged in bankruptcy; all of which are inaccurate.

87. The lack of investigation and reporting of inaccurate and incomplete information by Experian is unreasonable.

**F.    Damages**

88. Plaintiff pulled his credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

89. As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit Reporting Act and the power of this Court to preserve and perpetuate Plaintiff's rights to accurate credit reporting as intended by Congress.

90. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by Experian. Further, Plaintiff's diminished creditworthiness, resulting from Experian's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

91. Experian's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

FIRST CAUSE OF ACTION

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))

(Against Defendant)

92. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    Experian Failed to Assure Credit Reporting Accuracy**

93. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

94. Had Experian maintained reasonable procedures to assure maximum accuracy, Experian would never have reported the Plaintiff's Harley-Davidson account as described herein.

95. Experian knew, or should have known, (1) that the Harley-Davidson account was not closed or discharged in bankruptcy based on Plaintiff's dispute and attached documents, and (2) that the Harley-Davidson account was reaffirmed and should be reported as such. Further, Experian knew, or should have known, that this inaccurate and incomplete reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

96. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's credit worthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the inaccurate reporting Experian allowed.

97. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B.    Willful Violations**

98. Experian's violations, as described herein, were willful; specifically, Experian has intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

99. Experian regularly, as a policy, ignores disputes by consumers and fails to perform even a basic investigation regarding the disputes. Additionally, Experian regularly fails to forward disputes to data furnishers, thereby frustrating the entire dispute process.

100. To the extent Experian does send consumer disputes, Experian sends these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

101. Experian's employees receive little to no training concerning how to accurately report consumer debt.

102. Instead, Experian's employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

103. Experian's employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

104. Experian has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

105. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

106. Experian's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

107. In the alternative, Experian was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

108. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. §1681i(a)(1)

### (Against Defendant)

109. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   Experian Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

110. Pursuant to 15 U.S.C. § 1681i(a)(1), Experian was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Harley-Davidson account.

111. Thus, Experian failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

112. Experian is not a passive entity bound to report whatever information a data furnisher provides.

113. Plaintiff alleges Experian is readily familiar with the FCRA requirements and credit reporting industry standards.

114. Based on the foregoing, Plaintiff alleges that Experian can, and does, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

115. Experian can and does instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

116. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that the Harley-Davidson account was reporting incorrectly.

117. Had Experian conducted a proper investigation it could have updated the Harley-Davidson account to report as reaffirmed, open, and with a balance to indicate that payments were being made on the account. Further, Experian could have updated the payment history of the account (as payment history was provided with the Dispute Letter) to indicate that payments were being made on the account. However, Experian continued to report the account as described herein.

118. Experian, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

119. Plaintiff alleges that Experian failed to send an ACDV to Harley-Davidson to confirm accurate reporting on its account. Despite receiving the Dispute Letter providing notice of the inaccuracies, Experian failed to delete or correct the tradeline or conduct an investigation.

120. In the alternative, if Experian deemed the Dispute Letter "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), Experian failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received such notice from Experian, Plaintiff alleges Experian deemed the Dispute Letter valid, and thus triggered its obligations under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which it failed to comply.

## THIRD CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
### (Against Defendant)

121. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

A.  **Experian Failed to Review and Consider all Relevant Information**

122.  Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

123.  Experian's violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

B.  **Willful Violations**

124.  Experian's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

125.  In the alternative, Experian was negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

126.  Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against Defendant)

127.  Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

A.  **Experian Failed to Delete Disputed and Inaccurate Information**

128.  Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

129.  Experian's violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

B.  **Willful Violations**

130.  Experian's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

131. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

132. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

133. WHEREFORE, Plaintiff prays for judgment as follows:

    a. For preliminary and permanent injunctive relief to stop the Defendant from engaging in the conduct described above;

    b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

    c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

    d. Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

    e. For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq*.; and

    f. For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: September 28, 2023

*/s/ Kyle Schumacher*
Kyle Schumacher
kyle@schumacherlane.com
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

                                                        **SCHUMACHER LANE PLLC**

Dated: September 28, 2023                         */s/ Kyle Schumacher*
                                                                  Kyle Schumacher
                                                                  Attorneys for Plaintiff